UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY P. SMITH,

        Petitioner,                            Case No. 16-cv-12241
                                                  Hon. Matthew F. Leitman

v.

GEORGE STEPHENSON,

        Respondent.

_____/

## ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 9); (2) GRANTING A LIMITED CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Randy P. Smith is a state inmate in the custody of the Michigan Department of Corrections. In 2013, a jury in the Kalamazoo County Circuit Court convicted Smith of first-degree felony murder, MICH. COMP. LAWS § 750.316, armed robbery, MICH. COMP. LAWS § 750.529, and conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157a. The state trial court then sentenced Smith to a term of life in prison.

On June 16, 2016, Smith filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) The Court then stayed this action so that Smith could exhaust additional claims in state court. (*See* Order, ECF No. 6.) Following the conclusion of those state court proceedings, Smith

- 1 -

returned to this Court and filed an amended habeas petition raising both his original and newly exhausted claims. (*See* Am. Pet., ECF No. 9.)

The Court has carefully reviewed the amended petition and related state-court record and concludes that Smith is not entitled to federal habeas relief. The Court therefore **DENIES** Smith's amended petition. However, the Court will **GRANT** Smith a limited Certificate of Appealability on his claim that the prosecutor committed misconduct by eliciting opinion testimony from police officers that they personally believed that Smith lied to them and was involved in the robbery and his related claim that his trial counsel was ineffective for not objecting to the admission of that testimony. The Court will also **GRANT** Smith leave to proceed *in forma pauperis* on appeal.

## I

## A

Smith's convictions arose from the October 3, 2010, robbery and murder of Smith's friend and neighbor Joseph Salib at Salib's home. The Michigan Court of Appeals described the relevant facts as follows:

> Defendant's convictions arise out of the October 3, 2010, shooting death of Joseph Salib. Defendant lived on the same street as the victim. The prosecution presented evidence to establish that approximately two weeks before the victim's death, defendant asked two acquaintances if they would assist him in robbing the victim, who was a known drug dealer; both men refused. Defendant subsequently told one of the men, Ricky Dixon, that he

had recruited an individual named Doug Davis to assist him in the robbery. Dixon told defendant not to bring Doug, because Doug would likely kill the victim. Despite this warning, Dixon saw defendant with Doug on October 3, 2010, the night the victim was killed. Telephone records showed that there were several telephone calls on the day of the murder, including a "flurry of phone calls" at approximately the same time the shooting occurred, between Doug's cellular telephone number and a cellular telephone that defendant shared with another individual.

It is undisputed that on the evening of October 3, 2010, defendant was at the victim's house in the time frame leading up to the assault, including hanging out by a bonfire in the victim's backyard. At some point that evening, defendant approached an individual who lived down the street from where the shooting occurred and asked that person if he had a gun because defendant's friend was being robbed. The individual did not give defendant a gun, and defendant walked away. Shortly thereafter, the individual heard gunshots emanating from the direction toward which defendant went.

Jolanta Meriweather, the victim's girlfriend, arrived at the victim's house shortly after the shooting. When she pulled into the victim's driveway, defendant asked her to telephone 911, but did not indicate why. Meriweather heard defendant say that the victim had been shot, then heard defendant say three times to the victim, who was clinging to life, "I didn't mean for it to go down like that." Upon Meriweather's insistence, defendant attempted to drag the victim into her car in an effort to bring him to the hospital.

Responding to a 911 call, police officers arrived at the victim's home and found defendant and Meriweather attempting to put the victim in Meriweather's vehicle. At the time, the victim's ankles were taped together with duct tape, and one of his wrists was wrapped in duct tape as

well. Officers were unable to revive the victim, and he died shortly thereafter.

When interviewed by police officers, defendant stated that he had been at the victim's house for a backyard bonfire when a masked individual approached, pointed a handgun at his head, and ordered him to go inside, where the victim was. Once inside, defendant became nervous and ran out the door, eluding the gunman. Defendant maintained that he hid in the bushes outside the house, and after hearing gunshots and seeing the masked man leave, went inside to check on the victim. Defendant did not call the police because he did not have a cellular telephone.

Several witnesses testified about their contact with defendant after the victim's killing. One witness recalled that, on the morning after the killing, defendant informed her that the victim had died, and that he said either "I didn't mean for it to happen this way," or "I never meant it to happen this way." The witness also reported that defendant told her that "they" made him duct tape the victim's hands together. Dixon also saw defendant after the shooting. According to Dixon, defendant told him that he should have heeded Dixon's warning that Doug would kill the victim. Another witness testified that he heard defendant and Doug talking about a robbery that "went bad."

Alan Davis testified that he spoke with defendant after the victim's death and that defendant asked him where he could sell several gold and diamond rings. Alan testified that defendant told him he had set up a robbery with Doug; defendant stated that Doug was the wrong person to use because he ended up killing the victim. Alan recalled that defendant told him that he and Doug were supposed to get drugs and money from the robbery; however, defendant indicated that he did not receive as much as he thought he should have from Doug. In addition, defendant told Alan that it was not his plan for the victim to get shot; he

- 4 -

believed that the victim was not the type of person who would have fought back during the robbery.

*People v. Smith*, 2015 WL 773720, at ** 1-2 (Mich. Ct. App., Feb. 24, 2015).

The jury convicted Smith of felony murder, armed robbery, and conspiracy to commit armed robbery. *See id.* at *1.  "The trial court [then] sentenced [Smith] to life imprisonment without eligibility for parole on his felony murder conviction, and life imprisonment on his armed robbery and conspiracy convictions." *Id.*

## B

Following sentencing, Smith filed a direct appeal in the Michigan Court of Appeals. His appointed appellate counsel filed a brief that raised three claims:

> I. Defendant's convictions fail the sufficiency of evidence test. Reversal is therefore warranted, US Const Am XIV.
>
> II. The testimony of three police witnesses, at specific pages in the record, violated the prohibition against witnesses opining that the accused is guilty. These witnesses were not qualified as experts by the court but their opinions of guilt were expressly premised upon their being experts. Their role as fact and expert witnesses was not properly demarcated. The error is manifest: Prosecutorial error in submitting the evidence, ineffective assistance in failing to object, and trial court error in failing to intervene or to offer a cautionary instruction. A new trial is warranted.
>
> III. Defense counsel was ineffective in failing to request lesser offense instructions. This is evident from the fact that the jury asked the trial court whether it could consider a lesser offense on the felony murder count. A new trial is warranted, US Const Am XIV.

Smith then retained substitute counsel who filed a supplemental brief that raised three additional claims:

> I. Due process requires reversal where the defendant's convictions were obtained on the basis of legally insufficient evidence, pursuant to US Const, Ams V, VI, XIV; Const 1963, art 1, sec. 17, 20.
>
> II. Where the prosecutor engaged in pervasive misconduct by repeatedly making civic duty arguments, the defendant's trial was so fundamentally infected with unfairness that the resulting conviction was a denial of due process of law pursuant to US Const Am XIV.
>
> III. The defendant was denied the effective assistance of counsel, and his due process rights to a fair trial, where defense counsel failed to object to clearly prejudicial prosecutorial misconduct, pursuant to US Const, Am VI; Const 1963, art 1, sec 20.

The Michigan Court of Appeals affirmed Smith's convictions and sentence in an unpublished opinion. *See id.* Smith filed an application for leave to appeal in the Michigan Supreme Court raising the same six claims that he raised in the Court of Appeals, but the Michigan Supreme Court denied leave. *See People v. Smith*, 869 N.W.2d 564 (Mich. 2015) (Table).

C

On June 16, 2016, Smith filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) On that same day, Smith filed a motion to stay these proceedings so that he could return to state court and exhaust an additional set of

- 6 -

claims. (*See* Mot., ECF No. 3.) The Court granted that motion. (*See* Order, ECF No.

6.)

Smith then returned to the state trial court and filed a motion for relief from

judgment.  In that motion, Smith raised the following four claims:

> I. Defendant is entitled to relief from judgment because his
> Sixth Amendment due process right to confrontation and
> a fair trial were violated where the state improperly
> admitted and used cell phone records provided by a non-
> testifying custodian or analyst as substantive evidence to
> prove Defendant was guilty of conspiracy and/or aiding or
> abetting the crime of felony murder.
>
> II. Defendant is entitled to relief from judgment because
> he was denied his Sixth Amendment right of
> confrontation, due process of law, and a fair trial where his
> conviction was obtained with the use of out-of-court
> hearsay statements from a non-testifying accomplice or
> co-conspirator.
>
> III. Defendant was denied his Sixth Amendment right to
> the effective assistance of trial counsel where trial counsel
> otherwise failed to subject the state's case to meaningful
> adversarial testing where counsel otherwise failed to
> conduct a pre-trial investigation and interview of crucial
> witnesses and where counsel failed to object to and
> prevent the improper admission and use of out-of-court
> statements from a non-testifying declarant.
>
> IV. Defendant was denied his Sixth Amendment right to
> the effective assistance of appellate counsel where counsel
> failed to investigate and raise colorable constitutional
> claims on direct appeal.

(St. Ct. Mot., ECF No. 16-9.)

The state trial court denied the motion. It concluded that Smith's claims were procedurally defaulted because he "could have" raised them on direct appeal but failed to do so. (St. Ct. Order, ECF No. 16-11, PageID.1135.) The court further held that Smith could not excuse his procedural default because he had not shown "good cause [for the default] or that he had been prejudiced." (*Id.*, PageID.1139.)

Smith then filed an application for leave to appeal in the Michigan Court of Appeals raising the same claims that he raised in his motion for relief from judgment. That court denied the application because Smith "failed to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. of Appeals Order, ECF No. 16-14, PageID.1470.) Smith applied for leave to appeal that decision in the Michigan Supreme Court, but the Supreme Court denied leave to appeal with citation to Michigan Court Rule 6.508(D), Michigan's procedural default rule. (*See* Mich. Sup. Ct. Order, ECF No. 16-15, PageID.1629.)

## D

Having exhausted his state court remedies, Smith returned to this Court and filed an amended habeas petition. (*See* Am. Pet., ECF No. 9.) In the amended petition, Smith raises the following eleven claims:

> I. Due Process, Insufficient Evidence. The prosecution charged me with felony murder, with the underlying felonies consists of armed robbery and conspiracy to commit armed robbery. Other than hearsay testimony there is not a scintilla of physical evidence that proves the

Defendant had any part in planning in the actions that ultimately led to the victim's death.

II. Prosecutorial Misconduct. It's improper for the prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their power. In both opening and closing arguments the prosecutor made statements intended to elicit sympathy through the notion of civic duty.

III. Effective Assistance of Counsel at Trial. Failure to object during trial prejudiced the Defendant in that had an objection been made it is highly likely that the Defendant would have been acquitted because statements made by the prosecutor that were not supported by the evidence produced at trial.

IV. Improper Testimony; Police Officer. The testimony in question from the police officers improperly expressed an opinion regarding Defendant's guilt to the jury.

V. Defective Jury Instruction. Trial counsel failed to request lesser offense instructions. This is evident from the fact that the jury asked the trial court whether it could consider a lesser offense on the felony murder.

VI. (Claim "A" in Amended Petition) Petitioner is entitled to habeas relief because his Sixth Amendment right to confrontation was violated where the State improperly admitted and used cell phone records which were provided by a non-testifying analyst.

VII. (Claim "B") Petitioner is entitled to habeas relief because his Sixth Amendment right to the effective assistance of trial counsel as well as the right to a fundamentally fair trial under the Fourteenth Amendment were violated when trial counsel otherwise failed to subject the state's case to meaningful adversarial testing under, *United States v. Cronic*, 466 U.S. 648 (1984); *Strickland v. Washington*, 466 U.S. 668 (1984):

- 9 -

i. Trial counsel was ineffective for failing to object to misleading statements made by the prosecutor concerning a crucial element of the states case;

ii. Trial counsel was ineffective for failing to request lesser included offense instructions;
iii. Trial counsel was ineffective for failing to object to or correct erroneous jury instructions concerning the theory of aiding and abetting;

iv. Trial counsel was ineffective for failing to investigate and raise any defense to the charges;

v. Trial counsel failed to investigate, interview or call any witnesses prior to or during petitioner's trial;

vi. Trial counsel failed to introduce or compel the introduction of the Police Report from the Kalamazoo Department of Public Safety concerning Doug Davis, the alleged, "principal," who allegedly shot and killed the victim during the armed robbery;

vii. Trial counsel failed to investigate and interview Doug Davis, who the state argued was the "principal," who allegedly shot and killed the victim during the alleged armed robbery;

viii. Trial counsel failed to call as a witness Doug Davis who was the alleged "principal," the state argued was the person who actually shot and killed the victim during the alleged armed robbery;

ix. Trial counsel failed to interview or call as witnesses, the people who corroborated the alibi of Doug Davis, the alleged "principal," who allegedly killed the victim during the alleged armed robbery;

- 10 -

x. Trial counsel failed to file any pre-trial motions or otherwise object to the involuntary extra-judicial statements of petitioner which were used by the State as a confession;

xi. Trial counsel failed to file any pre-trial motions or otherwise object to or limit the admission of the AT&T cell phone records;

xii. Trial counsel failed to verify the authenticity or certification of the AT&T cell phone records prior to or during their admission into Petitioner's trial;

xiii. Trial counsel failed to compel the attendance of the keeper or analyst who prepared and certified the AT&T cell phone records.

VIII. (Claim "C") Petitioner is entitled to habeas relief under the Sixth Amendment because appellate counsel failed to investigate and raise colorable constitutional claims on direct appeal:

i. Appellate counsel failed to file a timely Motion to Remand for a Ginther hearing so that an adequate record could be developed concerning the actions, or inactions of trial counsel;

ii. Appellate counsel failed to raise colorable constitutional claims on appeal.

IX. (Claim "D") Petitioner is entitled to habeas relief under the Fourteenth Amendment where it can be affirmatively shown that his conviction was the result of a fundamentally unfair trial because of the following:

i. The prosecutor committed misconduct during closing argument;

ii. The prosecution materially mislead the jury concerning crucial evidence regarding the

- 11 -

participation or concert of activity between Petitioner and the alleged "principal";

iii. The prosecution failed to call as a witness the AT&T analyst who prepared the cell phone records admitted into Petitioner's trial.

X. (Claim "E") Petitioner is entitled to habeas relief where it can be shown that his underlying convictions for felony-murder and armed robbery were the result of a fundamental miscarriage of justice.

XI. (Claim "F") Petitioner Smith argues habeas relief should be granted where it can be shown he was denied the fundamental protections of due process under the Fourteenth Amendment because the State Courts process was so deficient he was unable to receive a full and fair evidentiary hearing prior to, after trial, and during collateral proceedings. *Jefferson v. Upton*, 130 S. Ct. 2217 (2010).

Respondent filed a responsive pleading in which he asserted that Smith's claims are without merit, abandoned, and/or procedurally defaulted. (Answer, ECF No. 15.)

After initial review of the pleadings and state court record, the Court appointed counsel for Smith. (*See* Order, ECF No. 24.) Appointed counsel was directed to investigate the claims based on the allegation that Doug Davis had a verified alibi, therefore undermining the prosecutor's theory of the case that Davis was the shooter. Appointed counsel was able to discover and file additional materials, principally additional police reports and interview materials relevant to Doug Davis' alibi claim. (*See* Supp. Pleadings, ECF Nos. 37, 38.) As described

further below, those materials persuaded the Court that Smith's trial counsel was not ineffective for failing to pursue a defense related to Davis' alleged alibi. Respondent also filed additional responsive pleadings. (*See* Supp. Pleadings, ECF Nos. 31, 41.) The Court has reviewed all of these materials and is now prepared to rule on the claims in Smith's amended petition.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

## 1

Smith first claims that insufficient evidence was presented at trial to sustain his convictions. Smith asserts that the witnesses who testified to hearing him make

incriminating statements before and after the crime lacked credibility, and he says

that there was no evidence presented showing that Doug Davis was the gunman or

that Smith aided him in committing the crime. (*See* Am. Pet., ECF No. 9,

PageID.160-161. *See also* Supp. Br., ECF No. 30, PageID.1873-1875, 1903.)

The Michigan Court of Appeals addressed this claim on direct review. After

reciting the applicable constitutional standard and the elements of the offenses, it

rejected the claim on each offense of conviction:

> There was sufficient evidence for a rational jury to find
> defendant guilty of armed robbery on an aiding and
> abetting theory. The evidence showed that defendant
> recruited Doug to help him rob the victim. A police officer
> testified that the victim's ankles were duct-taped together.
> Alan testified that, after the robbery, defendant asked
> where he could sell gold and diamond rings. Alan also
> testified that defendant stated that he did not receive as
> much as he should have after the robbery with Doug.
> Finally, the evidence showed that a gun was used in the
> commission of the crime based on the bullet wounds found
> on the victim. Viewing this evidence in a light most
> favorable to the prosecution, the evidence was sufficient
> to support defendant's conviction of armed robbery on an
> aiding and abetting theory.
>
>                              \*\*\*
>
> As noted above, the evidence showed that defendant
> recruited Doug to assist him in committing an armed
> robbery after others turned down defendant's request to
> participate in the robbery. Further, after the offense,
> defendant told witnesses that he recruited Doug to commit
> an armed robbery, and that he regretted that choice
> because Doug killed the victim. Defendant and Doug were
> seen together on the night of the offense. Moreover, a

detective testified regarding numerous telephone calls made around the time of the offense between Doug and a cellular telephone that defendant was allowed to use. Viewing this evidence in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction for conspiracy to commit armed robbery.

\*\*\*

The parties stipulated to the fact that the victim was killed on the date of the offense after suffering gunshot wounds to his chest and abdomen. The evidence and reasonable inferences supported a finding that Doug killed the victim. Because "[a] jury may infer that the defendant aided and abetted the killing by participating in the underlying offense," *People v. Bulls*, 262 Mich. App. 618, 625 (2004), the evidence was sufficient to show that defendant aided and abetted the killing on the basis of his involvement in the armed robbery. Concerning malice, the evidence showed that defendant was warned that Doug would likely kill the victim, but he continued with his plan regardless. The evidence also showed that, before the victim was shot, defendant asked a neighbor for a gun, but he was not given one. Two witnesses testified that after the victim died, they heard defendant say that he "never meant for it to happen this way." Thus, the evidence supported a finding that, even though defendant did not intend the victim's death, he "'intended to do an act [armed robbery] in obvious disregard of life-endangering consequences,' thus evidencing his malicious intent[.]" *Id.*, quoting *People v. Goecke*, 457 Mich. 442, 466 (1998) (internal citation omitted; alteration omitted). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to convict defendant of felony murder.

*Smith*, 2015 WL 773720, at \*\* 2-4.

**2**

The clearly established federal law governing Smith's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context. As the United States Court of Appeals for the Sixth Circuit has explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a *Jackson* claim on habeas review, a reviewing court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

### 3

Smith has not shown that the Michigan Court of Appeals' decision denying relief on his sufficiency-of-the-evidence claim was contrary to, or unreasonably applied, the clearly established federal law described immediately above. Here,

given the two layers of deference the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that Smith planned and participated in the crime.

First, the jury could have accepted as truthful the witnesses who testified that Smith attempted to solicit their participation in the crime and later informed them of his plan to use Doug Davis to commit the robbery. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (explaining that "[a] reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court"). More specifically, two witnesses, Ricky Dixon and Daniel Allen, testified that Smith attempted to solicit them to rob Salib, and Dixon warned Smith not to use Doug Davis to help. Three witnesses, Dixon, Allen, and Alan Davis, further testified that after the crime, Smith admitted the robbery had gone bad and said that he should have listened to Dixon about not using Doug Davis to help with the robbery.

The jury could also have interpreted Smith's actions on the night of the murder and during the following days as incriminating. He hid near the scene and did not flag down a police officer who first drove by. When he ran from the scene towards his house, he detoured and gave an innocent account to a neighbor, who had spotted him. And only when he saw Jolanta Merriweather, the mother of Salib's children, drive up to Salib's house, did Smith return to the scene and make it appear as though

- 18 -

he was helping save Salib's life. Then, the next morning, perhaps recalling that his neighbor Dianne Lynch had seen him together with Salib in his backyard the previous night, Smith paid her a visit and attempted to explain himself.

Smith's statements of regret to no less than five witnesses—Dixon, Allen, Alan Davis, Merriweather, and Lynch—were also all similar and therefore mutually corroborating. The Court acknowledges that Dixon and Allen may have known each other and that Dixon and Alan Davis may have been testifying under a plea agreement.  But Merriweather and Lynch were not connected to one another and were not testifying under plea agreements. These independent groups of witnesses all testified to Smith having the same basic post-robbery reaction – regret at the robbery having not gone as planned and resulting in Salib's death.  The jury could reasonably have interpreted all of this overlapping testimony as establishing that Smith repeatedly admitted after the robbery that he had planned and participated in the robbery.

Moreover, the theory that Smith acted in concert with Doug Davis— something he told several witnesses—was corroborated by the evidence that cellphones available to the two men communicated with each other at times relevant to the crime. The cellphone record and witness testimony about Smith's plan to use Doug Davis were mutually corroborating and incriminating.

Finally, the jury could have concluded from eyewitness descriptions of Smith's behavior and actions that he was not merely present at the scene, but that he had also been a participant in the crime. Smith's behavior, viewed most favorably to the prosecution, provided circumstantial evidence that he attempted to cover-up the fact that he participated in the robbery and make it look like he was a mere witness or bystander.

Smith counters that prosecution's case was not actually that strong. He says that two of the witnesses who testified against him did so "pursuant to plea bargains with significant benefits," that two other witnesses suspiciously "did not come forward" with incriminating evidence against him "for months," and that other witness testimony was inconsistent with the witnesses' own earlier statements and was the result of pressure put on the witnesses by police. (Supp. Br., ECF No. 30, PageID.1873-1875, 1903.) But Smith's trial counsel questioned the credibility of these witnesses at trial during cross-examination and her summations to the jury, and the jury did not appear to be persuaded by those arguments. (*See* Trial Tr., ECF Nos. 16-2, PageID.698; 16-4, PageID.1031-1035.) Thus, it was not unreasonable for the Michigan Court of Appeals to conclude that there was sufficient evidence to convict Smith.

For all of these reasons, the Michigan Court of Appeals did not unreasonably apply the *Jackson* standard when it concluded that sufficient evidence supported Smith's convictions. The Court therefore denies Smith relief on this claim.

## B

Smith asserts in his second claim that the prosecutor committed misconduct when, during both opening statements and closing arguments, the prosecutor appealed to the jury's sense of civic duty.  Respondent asserts that review of that claim is procedurally defaulted because Smith did not contemporaneously object to the prosecutor's statements at trial. (*See* Answer, ECF No. 15, PageID.469-472.) The Court agrees.

## 1

Smith first raised this claim in the direct appeal of his convictions.  The Michigan Court of Appeals reviewed the claim for "plain error" because Smith failed to object to the prosecutor's statements at trial and rejected the claim.  It further concluded that the prosecutor's statements were not improper:

> Next, defendant argues that the prosecutor committed prosecutorial misconduct by […] making a civic duty argument. [….] We generally review issues of prosecutorial misconduct de novo. *People v. Akins*, 259 Mich. App. 545, 562 (2003). We decide issues on a case-by-case basis by reviewing the pertinent part of the record and evaluating the prosecutor's conduct in context. *Id*. However, because defendant failed to preserve this issue by objecting below, we review the prosecutor's conduct

for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763-764.

***

Defendant next argues that the prosecutor improperly made civic duty arguments in his opening statement and closing argument. Although prosecutors are "accorded great latitude regarding their arguments and conduct[,]" a prosecutor may not make a civic duty argument that appeals to the fears and prejudices of the jury. *People v. Bahoda*, 448 Mich. 261, 282 (1995) (quotation and citation omitted). By doing so, the prosecutor improperly injects issues broader than the guilt or innocence of the defendant. *People v. Abraham*, 256 Mich. App. 265, 273 (2003).

The challenged remarks are as follows:

> Opening Statement: At the end of the proofs I'm going to ask you, not just to find the defendant guilty, but tell him he's guilty. Tell him Joe Salib died, because you set this whole thing up and you worked on it with other people to kill him during the armed robbery. You did do an armed robbery, and we're not going to stand for it, and we certainly aren't going to allow people to go out there and plan armed robberies to kill your friends, even if the guys [sic] a drug dealer. Even if he's a drug dealer, he does not deserve to be tied up, pants down, gurgling and dying in front of his kids.

> Closing Argument: Ladies and Gentlemen, he's guilty of [Count] I. He's guilty of [Count] II. He's guilty of Count III. People ask that you come back, walk through the door, look at him and say as citizens of this community you are guilty of killing and being a part of killing Joseph Salib, in the city, in 2010.

- 22 -

> Neither of the challenged remarks constituted an improper civic duty argument. Viewed in context, each of the challenged remarks was merely a summation of the prosecutor's argument. After the prosecutor discussed the evidence to be produced or that was produced at trial, the prosecutor asked the jury to find defendant guilty. Prosecutors are not required to argue "in the blandest of all possible terms[,]" *People v. Ullah*, 216 Mich. App. 669, 678 (1996), and may ask the jury to convict on the basis of the evidence presented at trial, *see Bahoda*, 448 Mich. at 284-285. Further, any minimal prejudice was cured by the trial court's instruction that the lawyers' arguments were not evidence. *People v. Thomas*, 260 Mich. App. 450, 456 (2004).

*Smith*, 2015 WL 773720, at ** 6-7.

## 2

Smith is not entitled to habeas relief on this claim because it is procedurally defaulted. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A claim is procedurally defaulted when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

All three requirements for a procedural default are satisfied here. First, Smith failed to comply with Michigan's procedural rules when he did not object at trial. *See Smith*, 2015 WL 773720, at *6. Second, the Michigan Court of Appeals relied on that procedural rule when it concluded that Smith had "failed to preserve this

- 23 -

issue" for appeal. *Id.* Finally, a state's "contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Moreover, the Sixth Circuit "view[s] a state appellate court's review for plain error" – as the Michigan Court of Appeals did here – "as the enforcement of a procedural default." *Id.* Therefore, because the Michigan Court of Appeals reviewed this claim for plain error due to Smith's failure to object at trial, "under the established law of this circuit," Smith has "waived [his] right to federal habeas review" unless he can show cause and prejudice. *Id.* (internal punctuation omitted). He cannot.

### 3

Smith insists that he can show cause and prejudice to excuse his procedural default based on the ineffectiveness of his trial counsel. More specifically, Smith says that his trial counsel should have raised a meritorious objection to the prosecutor's statements at trial.[1] As the Sixth Circuit has explained, a court reviews *de novo* whether ineffective assistance excuses a procedural default:

---

[1] Smith has also raised a free-standing claim of ineffective assistance of counsel for failing to raise this same objection. The Court discusses that claim separately below in subsection (B)(4).

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular, "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237; *see also, e.g.*, *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review *de novo* the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.

*Chase v. MaCauley*, 971 F.3d 582, 591-92 (6th Cir. 2020).

"In order to show ineffective assistance of counsel excusing a procedural default, [courts] generally require a defendant to," among other things, "show that his [] counsel's failure to raise the claim rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-prong analysis for assessing ineffective-assistance-of-counsel claims: 1) 'the defendant must show that counsel's performance was deficient,' and 2) 'the defendant must show that the deficient performance prejudiced the defense.'" *Id.* at 592 (quoting *Strickland*, 466 U.S. at 687; internal punctuation omitted). To meet the first *Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and he must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that ... the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 688-89. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Smith has failed to excuse his procedural default because he has not shown that his counsel was constitutionally ineffective under *Strickland*. As an initial matter, there is a real question as to whether the prosecutor's comments were improper at all, *see United States v. Hall*, 979 F.3d 1107, 1122 (6th Cir. 2004) (explaining that "unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible"), and thus whether an objection would have been futile. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("omitting meritless arguments is neither professionally unreasonable nor prejudicial"). In any event, there is no reasonable probability that an objection would have changed the result of Smith's trial. The prosecutor's comments were brief and were not a focus of his opening or closing remarks to the jury. Instead, the isolated remarks followed the prosecutor's

summation of the evidence and his argument for why the evidence supported a finding of guilt beyond a reasonable doubt.  Because Smith cannot show prejudice from his counsel's failure to object, he cannot show cause and prejudice to overcome his procedure default.  The Court will therefore deny relief on this claim.

### 4

Smith has also raised a free-standing claim of ineffective assistance of counsel arising out of his trial counsel's failure to object to the prosecutor's alleged appeal to the jury's sense of civic duty.  Smith raised this claim on direct appeal and the Michigan Court of Appeals rejected it.  That court held that "because the[] challenged remarks were proper, [Smith's] argument that counsel was ineffective for failing to object was [] without merit." *Smith*, 2015 WL 773720, at *7.

Because this freestanding ineffective assistance claim was reviewed on the merits by the state courts, it is not reviewed *de novo* and "must [instead] meet the higher standard of AEDPA." *Chase*, 971 F.3d at 591.  And the "standard" for ineffective assistance claims "is even more difficult to meet [under AEDPA], where the review that applies to *Strickland* claims is 'doubly deferential.'" *Tackett*, 956 F.3d at 373 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was

unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

Smith has not shown that the Michigan Court of Appeals' decision denying relief on his ineffective assistance claim arising out of the prosecutor's alleged appeal to the jury's civic duty was contrary to, or unreasonably applied, clearly established federal law. For all of the reasons explained immediately above, Smith cannot show prejudice under *Strickland*. Thus, the Michigan Court of Appeals' rejection of this claim was not unreasonable.

## C

The next set of claims are Smith's strongest. In Smith's fourth claim, he says that the prosecutor committed misconduct by improperly eliciting opinion testimony from police officers that they personally believed that Smith lied to them and that he was involved in the robbery. Smith also asserts a standalone claim that his trial counsel was ineffective for failing to object to the admission of this opinion testimony. The Court will review both claims separately.

In his state-court appeal, Smith identified the following three portions of testimony that he said constituted inadmissible opinion testimony:

(1) Testimony from Officer William Moorian that based on his experience and Smith's body language during his police interview, he believed that Smith was "involved in the home invasion robbery" and that Smith's explanation that he spent

- 28 -

10 to 12 minutes hiding in bushes near Salib's house during
the robbery was not believable. (Trial Tr., ECF No. 16-2,
PageID.734-735, 746-747; Trial Tr., ECF No. 16-3,
PageID.766, 773.)

(2) Testimony from Officer Brian Beauchamp that Smith's
version of events led him (Officer Beauchamp) to conclude
the robbery was "probably an inside job" and that he believed
Smith lied during his police interview. (Trial Tr., ECF No.
16-3, PageID.833-834, 844-845.); and

(3) In what Smith identified as the "most egregious" testimony
(St. Ct. Appeal, ECF No. 16-12, PageID.1172), testimony
from Officer Shelia Goodell that cell phone records "showed
a conspiracy between" Smith and Doug Davis. (Trial Tr.,
ECF No. 16-3, PageID.986.)

(St. Ct. Appeal, ECF No. 16-12, PageID.1170-1178.[2])   Respondent asserts that
review of the misconduct claim based on the officers' opinion testimony is

---

[2] In Smith's supplemental brief in this Court, his appointed habeas counsel
highlighted additional opinion testimony that Smith did not appear to identify in his
state court appeal. (*See* Supp. Br., ECF No. 30, PageID.1885-1904.)  The Court
believes that it is appropriate to limit its review to the portions of the record identified
and adjudicated in the state courts.  In any event, even if the Court considered those
additional portions of testimony, it would not change the result here because, as
described further above, like the testimony identified in state court, the testimony
identified by Smith's appointed habeas counsel was not a substantial part of the
prosecution's case and was not emphasized by the prosecution during closing
arguments.

procedurally barred because Smith did not contemporaneously object to admission of the opinion testimony. (*See* Answer, ECF No. 15, PageID.469-472.) The Court agrees.

**1**

Smith first raised this prosecutorial misconduct claim in the direct appeal of his convictions. The Michigan Court of Appeals reviewed the claim for "plain error" because Smith failed to object to the opinion testimony at trial, and it rejected the claim:

> Next, defendant argues that the prosecutor committed prosecutorial misconduct by eliciting improper opinion testimony from three detectives[. ….] However, because defendant failed to preserve this issue by objecting below, we review the prosecutor's conduct for plain error affecting defendant's substantial rights.
>
> ***
>
> Defendant first contends that the testimony of three detectives was improper because the detectives gave expert opinion testimony without being qualified as expert witnesses. *See* MRE 702. He contends that it was improper for the prosecutor to knowingly offer this testimony in violation of MRE 702. After reviewing the challenged testimony, we do not agree with defendant; none of the detectives provided expert testimony, and the prosecution did not proffer their respective testimony as expert testimony. Instead, the detectives offered testimony as lay witnesses on matters that were rationally based on their respective perceptions and observations; they did not offer opinions that were dependent on scientific, technical, or other specialized knowledge. *See* MRE 701; MRE 702;

- 30 -

*People v. McLaughlin*, 258 Mich. App. 635, 657-659 (2003).

More significantly, however, defendant argues that the detectives' testimony was improper because each opined on defendant's guilt in response to questions posed by the prosecutor that were designed to elicit such opinions. "A witness may not opine about the defendant's guilt or innocence in a criminal case." *People v. Heft*, 299 Mich. App. 69, 81 (2012). However, police officers do not offer improper opinion testimony when explaining, among other matters, the steps of the investigation and how the investigation came to focus on the defendant, that certain statements by the defendant were unreasonable, given the circumstances and the perceptions of the officers, or that the defendant's statements led the officers to believe that "something was afoot[.]" *Id.* at 82-83.

Here, some of the challenged testimony was proper, as it concerned how the detectives came to treat defendant as a suspect, rather than a mere witness, given defendant's statements during interviews. *See Id.* However, some of the challenged testimony by the detectives came dangerously close to crossing, and at times may have crossed, the line that separates improper opinion testimony about guilt and proper testimony explaining the criminal investigation. Assuming without deciding that the testimony and the prosecutor's questions preceding the testimony were improper, we find that defendant cannot establish plain error requiring reversal, given the strength of the properly admitted evidence in this case. As noted, the prosecution presented testimony from witnesses who stated that defendant discussed the robbery with them, indicating that he planned to perpetrate the robbery with Doug, and then later expressed regret over choosing Doug for the robbery because Doug had shot the victim. One witness warned defendant that Doug would kill the victim, but defendant proceeded nonetheless. Further, a witness testified that defendant later bemoaned the fact that he did not receive as much from the robbery as he had originally

hoped. In addition, a witness recalled seeing defendant and Doug together before the robbery, and there was no dispute that defendant was at the victim's home on the evening of the robbery and shooting. And, we note that the prosecution did not emphasize the challenged comments in arguing that the jury should find defendant guilty of the above offenses.

Finally, we note that the harm caused by such improper questions and testimony could have been alleviated by a timely request for a curative instruction. *See People v. Unger*, 278 Mich. App. 210, 234-235 (2008) (explaining that, where a claim of prosecutorial error is not preserved by a contemporaneous objection, this Court will not reverse the defendant's convictions if the error could have been cured by a timely request for a curative instruction). Furthermore, the trial court instructed the jury that it alone was to decide the facts in the case and render a verdict. Thus, even assuming the existence of an error that was clear or obvious, defendant is not entitled to relief because he cannot establish the prejudice prong of plain error review, "i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich. at 763.

*Smith*, 2015 WL 773720, at ** 5-6.

## 2

As with Smith's first claim of prosecutorial misconduct, review of this misconduct claim is procedurally defaulted. *See Hinkle*, 271 F.3d at 244. The claim is procedurally defaulted because Smith failed to comply with Michigan's procedural rules when he did not object to the opinion testimony at trial, the Michigan Court of Appeals relied on that procedural rule when it held that Smith had "failed to preserve the issue" for appeal and reviewed the claim under a plain

error standard of review, *Smith*, 2015 WL 773720, at *6, and that holding constituted and adequate and independent state ground. *Hinkle*, 271 F.3d at 244.

Smith again seeks to excuse this procedural default is by showing that his trial counsel was ineffective under *Strickland*.  But that attempt to excuse his procedural default fails because (1) Smith has not overcome the presumption that his counsel's lack of objection was part of a reasonable trial strategy and (2) in any event, he cannot show prejudice because there is no reasonable probability that even if his counsel had objected, the outcome of his trial would have been different.

First, to satisfy the deficient performance prong under *Strickland*, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id*. at 690. Thus, a petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

On first blush, it may seem that Smith's trial counsel could not have had a reasonable strategic reason for withholding an objection to the officers' opinion testimony.  But a careful review of the record reveals otherwise.  At trial, Smith's trial counsel attempted to discredit the police officers' testimony by establishing that they had formed an opinion of Smith's guilt early on in their investigation and

refused to consider any alternatives to that belief. For example, during cross examination of one of the officers, counsel elicited testimony that the officer "never believed" that Smith was a victim and that "nothing [Smith] said" during his interview with police could have "convinced" the officer that Smith was telling the truth about what happened during the night of the robbery. (Trial Tr., ECF No. 16-3, PageID.844-845.) Counsel then hammered that theme during her closing argument, telling the jury that "no matter what [Smith] said [to police], he was their target." (Trial Tr., ECF No. 16-4, PageID.1030-1031, 1035.) Under these circumstances, Smith has not overcome the presumption that the lack of objection from his trial counsel was part of a reasonable trial strategy.

In addition, as the Michigan Court of Appeals made clear, some of the testimony that Smith identifies was not objectionable. As that court explained, "police officers do not offer improper opinion testimony when explaining, among other matters, the steps of the investigation and how the investigation came to focus on the defendant, that certain statements by the defendant were unreasonable, given the circumstances and the perceptions of the officers, or that the defendant's statements led the officers to believe that something was afoot." *Smith*, 2015 WL 773720, at * 5 (internal quotation marks omitted). Thus, "some of the challenged testimony was proper, as it concerned how the detectives came to treat [Smith] as a suspect, rather than a mere witness, given [Smith's] statements during interviews."

*Id.*  Because some of the officers' testimony was "proper," any objection to those portions of the testimony would have been futile, and Smith's trial counsel was not constitutionally ineffective for failing to make such a futile objection. *See Coley*, 706 F.3d at 752.

Moreover, and in any event, Smith has also failed to show that he suffered prejudice from his counsel's lack of objection.  As described in detail above, there was a substantial amount of properly admitted evidence of Smith's guilt.  In addition, the opinion testimony to which Smith says his trial counsel should have objected was not a substantial part of the prosecution's arguments to the jury.  Indeed, the overwhelming emphasis of the prosecution's closing and rebuttal arguments was on the non-officer witness testimony described above and on what Smith said and did.  In fact, only one part of the objected-to opinion testimony was even referenced in the closing argument and rebuttal, and only in passing. (*See* Trial Tr., ECF No. 16-4, PageID.1018.)   And importantly, the testimony that Smith identified as "most egregious" – Officer Goodell's testimony that cell phone records "showed a conspiracy between" Smith and Doug Davis – was not referenced at all.  For all of these reasons, Smith has not shown that he suffered prejudice from his trial counsel's failure to object to this testimony.

In sum, Smith has not overcome the presumption that his trial counsel's decisions at trial were reasonable trial strategy, nor has he shown that had his trial

counsel objected to the opinion testimony identified above that there is a reasonable probability the outcome of his trial would have been different.  For all of these reasons, Smith he cannot overcome his procedural default.  The Court will therefore deny relief on this claim.

### 3

Smith has also raised a free-standing claim of ineffective assistance of counsel arising out of his counsel's lack of objection to the opinion testimony identified above.  Smith raised this claim on direct appeal and the Michigan Court of Appeals rejected it.  That court held that "even assuming trial counsel's performance in failing to challenge the opinion testimony was objectively unreasonable," Smith was not entitled to relief because "there [was] not a reasonable probability of a different outcome" had his counsel objected to the testimony at trial. *Smith*, 2015 WL 773720, at *6.

As explained above, this freestanding claim of ineffective assistance is subject to deferential review under AEDPA.  And Smith is not entitled to relief under that standard because he has not shown that the Michigan Court of Appeals' decision denying relief on this ineffective assistance claim was contrary to, or unreasonably applied, clearly established federal law.  For all of the reasons explained immediately above, Smith cannot show that his trial counsel rendered a deficient performance

with respect to this testimony or that he suffered prejudice under *Strickland*.  Thus,

the Michigan Court of Appeals' rejection of this claim was not unreasonable.

## D

In Smith's fifth claim, he asserts that his trial counsel was ineffective for

failing to request a lesser-included offense instruction. Smith raised this claim on

direct review and the Court of Appeals rejected it:

> Finally, defendant argues that his counsel was ineffective for failing to request a jury instruction on the lesser-included offenses of second-degree murder and manslaughter. Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *LeBlanc*, 465 Mich. at 579. Because this Court denied defendant's request for a *Ginther* hearing on this claim, our review is limited to mistakes apparent on the record. *Fike*, 228 Mich. App. at 181.
>
> In this case, the jury asked during deliberations if it could consider lesser offenses, although the jury did not specify on which charge. The decision to request an instruction on a lesser-included offense is a matter of trial strategy. *See People v. Sardy*, 216 Mich. App. 111, 116 (1996). In this case, the defense theory, evident from counsel's opening statement and closing argument, appeared to be that defendant was not involved at all in the victim's killing. In other words, defense counsel utilized an "all-or-nothing" approach. This theory was consistent with defendant's statements to police officers. Had counsel requested an instruction on lesser-included offenses, counsel would have contradicted the only theory of defense. Counsel is not rendered ineffective for using a trial strategy that is ultimately unsuccessful. *People v. Kevorkian*, 248 Mich. App. 373, 414-415 (2001). Defendant cannot overcome

> the presumption that counsel's performance was sound
> trial strategy. *Toma*, 462 Mich. at 302.

*Smith*, 2015 WL 773720, at *7.

Smith has not shown that the Michigan Court of Appeals' decision denying relief on this ineffective assistance claim was contrary to, or unreasonably applied, clearly established federal law. First, Smith hot not overcome the presumption that his trial counsel's decision not to request a lesser-included offense instruction was sound trial strategy. As noted above, the Court affords deference to a trial counsel's strategic decisions and analyzes only whether there was "any reasonable argument" for counsel's strategic choice. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). And a failure to request charges on all possible lesser included offenses may be proper trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005); *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017). Here, trial counsel's decision not to seek any lesser-included offense instructions was consistent with Smith's claim that he was a completely uninvolved bystander. Smith's trial counsel may have reasonably decided not to argue a theory that was inconsistent with Smith's primary defense. *See Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002); *Midgyett v. Jackson*, 542 F.Supp.3d 665, 672 (E.D. Mich. 2021).

Second, Smith has not shown prejudice from his trial counsel's failure to request a lesser-included offense instruction. At trial, both the prosecution and the defense presented an "all or nothing" case to the jury – either Smith was intimately

involved in the planned armed robbery that led to the killing, or he was a completely innocent bystander.  Smith has not identified any version of the facts that could have led the jury to convict him of a lesser-included offense.  Thus, he has not shown that even if the court provided the jury a lesser-included offense instruction, there is a reasonable probability the jury's verdict would have been any different.

For all of these reasons, Smith has not shown that the Michigan Court of Appeals unreasonably rejected this claim.

## E

In Smith's sixth claim (labeled as Claim "A" in the amended petition), he argues that the state trial court violated his rights under the Confrontation Clause when it admitted the cell phone records discussed above. In Smith's seventh claim (Claim "B"), he raises thirteen additional allegations of ineffective assistance of trial counsel.  Many of those claims related to the failure of his trial counsel to investigate whether Doug Davis had an alibi and therefore could not have been the shooter as the prosecution claimed. These claims were all raised in Smith's motion for relief from judgment that he filed in the state trial court and in the appeal that followed the denial of that motion.

Respondent asserts that review of these claims is procedurally barred because the trial court denied Smith relief based on Michigan Court Rule 6.508(D)(3) due to

Smith's failure to raise these claims on direct appeal. (*See* Answer, ECF No. 15, PageID.500-501, 505-506.) The Court agrees.

## 1

As an initial matter, the state trial court enforced a procedural default when it denied Smith relief on these claims because he failed to demonstrate good cause or actual prejudice for the failure to raise the claims on direct appeal as Michigan Court Rule 6.508(D)(3)(b) requires. (*See* St. Ct. Order, ECF No. 16-11, PageID.1135-39.) That holding constitutes an independent and adequate state procedural ground. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).  Thus, the claims are defaulted.

## 2

Smith attempts to excuse his procedural default by showing that his appellate counsel rendered ineffective assistance on direct appeal.  But Smith has failed to show that his appellate counsel was ineffective.  An attorney is not required "to raise every nonfrivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003), *See also Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). A failure to raise a claim on appeal will generally constitute deficient performance only if the omitted claim is "clearly stronger" than the claims raised on direct review. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Here,

Smith has not shown that any of the omitted claims were "clearly stronger" than the ones raised by his appellate attorney on direct appeal.

a

The Court begins with Smith's multiple claims concerning Doug Davis' purported alibi defense. In summary, Smith claims that Davis had a verified alibi for the time of the crime. He claims that Davis was with his girlfriend and her mother at the time of the offense packing for a move, that the police interviewed Davis and his alibi witnesses, and that despite knowing that Davis could not have been the shooter, the prosecution falsely asserted at trial that it was an uncontroverted fact that Davis was the man Smith conspired with to commit the robbery. These factual allegations form the basis for the bulk of Smith's post-conviction allegations of ineffective assistance of counsel and prosecutorial misconduct.

As noted above, this Court appointed counsel for Smith so that counsel could conduct an investigation into whether there was arguable merit to the allegation that Davis had a verified alibi.[3]  Appointed counsel was able to obtain and file copies of the police reports regarding the alibi witnesses and a recording of Davis' interview with police. The new materials demonstrate that the claims based on Davis' alleged

---

[3] Normally a federal habeas court must confine itself to the existing record, but expansion is permitted to determine whether a habeas petitioner can demonstrate cause to excuse a default. *See* Rule 7 of the Rules Governing Section 2254 Cases; *Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013).

alibi are *not* clearly stronger than the claims raised on direct appeal, and therefore, direct appeal counsel was not ineffective for omitting them.

When Davis was interviewed by police on October 20, 2010, he unsurprisingly denied involvement in the robbery. Davis told police that he performed auto repossessions for work.  He admitted that he knew Salib as "the weed man," and he had seen him about six weeks before the interview. Davis denied knowing Smith, but he recognized him from a photograph as someone who had previously visited one of his neighbors. Davis told police that he could not recall where he was on day of murder. (*See* ECF No. 37-2, PageID.1957-1959.)

Davis left the police interview to attend a family event, and then he returned afterwards. Upon resumption of the interview, Davis said that he had spoken with his girlfriend, Kasie Falls, and she reminded him that they were packing for a move on the date of the murder with Falls' mother, Doris Falls. Davis further denied that he spoke with Smith on the phone on the day of the murder. (*See id.*)

About five months later, on March 11, 2011, police interviewed Kasie Falls. She did not confirm Davis' alibi. Falls told investigators that she could not "really remember what she would have been doing that day." She also said that it was "possibl[e]" that her mother was at her residence that day, and that they "may" have been packing. Falls recognized a photo of Smith as someone she had seen before but had never talked to. (*Id.*, PageID.1960-1961.)

Police interviewed Kasie Falls again sometime in 2013 at around the time of Smith's trial. Police told her that they now had two new witnesses against Davis. Falls admitted to police that "Doug and Randy Smith would speak" but "it was mostly outside." Regarding the night of the murder, Falls said "I don't remember[,] we were packing and getting ready to move and my mom was there and was getting ready to have surgery." She indicated, though, that at some point that night Davis left "for about 20 minutes to do a REPO and I told him to hurry his ass up." Falls said that when Davis left, "[i]t was evening. It was dark." (*Id.*, PageID.1962-1964.)

There is no record of Falls' mother having been interviewed by police.

Based on this evidence, the Court cannot conclude that Smith suffered prejudice based on his appellate counsel's failure to pursue claims (including ineffective assistance of trial counsel) related to Davis' claimed alibi on direct appeal. First, nothing in the records suggest that police confirmed or believed Davis' alibi. Instead, the record suggests that the police and prosecution always viewed Davis as the shooter. Moreover, had counsel raised a defense premised on the theory that Davis had an alibi, it might have opened the door for the prosecutor to present evidence that Davis stopped packing at some point on the night of the murder purportedly to perform a "repo." And given the phone record evidence, this would have allowed the prosecutor to argue that Davis used his repossession job as an

- 43 -

excuse to leave his house when Smith called him to tell him it was time to help with the robbery.

Finally, had Smith pursued a defense related to Davis' alleged alibi, Falls would have provided yet another witness who could testify that Smith and Davis knew each other and spoke to one another. Thus, the evidence Smith claims his trial counsel should have discovered and presented could have proven to be more harmful than helpful. For all of these reasons, Smith's claims associated with Davis' alleged alibi are not clearly stronger than the ones raised by appellate counsel on direct appeal.[4]

### b

The Court next turns to the claims related to the cell phone evidence. Smith has not shown prejudice from his appellate counsel's failure to raise these claims on direct appeal. Before trial, Smith's trial counsel stipulated to admitting the cell phone records. (*See* Trial Tr., ECF No. 16-2, PageID.544-545.) Smith has produced no evidence to show that those records were unreliable or inaccurate, or that there

---

[4] The Court initially had a question about why the prosecution proceeded in its prosecution of Smith but never charged Doug Davis, the purported shooter, with any crimes arising out of Salib's death. But it appears there may a reasonable answer to that question. Much of the evidence linking Davis to the crime was from Smith's own statements. But Smith's statements would likely not have been admissible against Davis (because they would have been hearsay as to Davis and because Smith presumably would not have agreed to testify at Davis' trial), and thus the prosecution may have reasonably concluded that it did not have enough admissible evidence to charge Davis despite the prosecution's belief he was the shooter.

was some other way to challenge admission of the underlying information had counsel not entered into the stipulation. Thus, Smith's trial counsel was not ineffective with respect to her handling of these records, and appellate counsel was not ineffective for failing to raise them on appeal. *See, e.g., Brown v. Rewerts*, 2020 U.S. App. LEXIS 27855, *12 (6th Cir. Sep. 1, 2020); *Hunter v. Howes*, 2012 U.S. Dist. LEXIS 21051, *43 (E.D. Mich. Feb. 21, 2012).

c

Next, Smith argues that his appellate counsel rendered ineffective assistance on direct appeal when appellate counsel failed to make a sufficient offer of proof to the Michigan Court of Appeals in support of Smith's motion to remand for a hearing in the state trial court on Smith's claim of ineffective assistance of trial counsel. Under Michigan state law, when a criminal appellant wishes to raise a claim of ineffective assistance of trial counsel based on facts not contained in the existing record, he must request a remand to the state trial court for what is known as a *Ginther* hearing. *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). A request for such a hearing must be accompanied by affidavits or other offer of proof as to the evidence the defendant wishes to present at the hearing. *See* Mich.Ct.R. 7.211(C)(1).

Here, Smith's appointed appellate counsel on direct appeal filed a motion in the Michigan Court of Appeals requesting a *Ginther* hearing on two grounds: (1)

trail counsel's failure to object to the officer opinion testimony discussed in Section (III)(C) above and (2) trial counsel's failure to request a lesser-included offense instruction. (*See* St. Ct. Mot., ECF No.16-12, PageID.1191-1211.) The Michigan Court of Appeals denied the motion as follows:

> Defendant-appellant has failed to demonstrate that an initial decision of the trial court or further factual development of the record is required for this Court to review his claims related to the admission of opinion testimony. Defendant-appellant has also not demonstrated, with a proper offer of proof, that he can overcome the presumption that his attorney did not request jury instructions on lesser included offenses for strategic reasons.

(Mich. Ct. App. Order, ECF No. 16-12, PageID.1334.) Smith thereafter retained substitute appellate counsel, but that new attorney did not pursue the request for a *Ginther* hearing further after the motion to remand was denied. (*See* ECF No. 16-12, PageID.1340-1378.)

Smith now says that his appellate counsel was ineffective because counsel failed to "make a sufficient offer of proof to justify a remand on either claim." (Supp Br., ECF No. 30, PageID.1881.) The Court concludes that Smith cannot show prejudice from the lack of an offer of proof.

First, the Michigan Court of Appeals did not refuse to remand for further consideration of Smith's ineffective assistance claim related to the opinion testimony due to the lack of an offer of proof. Instead, as quoted above, the Michigan Court

of Appeals concluded instead that "further factual development of the record [was not] required for th[e] [c]ourt to review [Smith's] claims related to the admission of opinion testimony." (Mich. Ct. App. Order, ECF No. 16-12, PageID.1334.)  Thus, Smith has not shown that his appellate counsel's failure to make a sufficient offer of proof prejudiced him with respect to his claim that trial counsel was ineffective for failing to object to the opinion testimony.

Second, Smith has not shown that he could have developed a viable claim of ineffective assistance of trial counsel based on the lack of a request for a lesser included offense instruction.  As noted above, he has failed to explain how he could have harmonized a request for that instruction with his defense that he was not involved in the robbery.  Moreover, Smith has not highlighted or identified for this Court what portions of the trial record could have supported a request for an evidentiary hearing on that issue.

For all of these reasons, Smith has not shown that he suffered prejudice as a result of his appellate counsel's failure to support his request for a *Ginther* hearing with a sufficient offer of proof.

**d**

Finally, there are a few other undeveloped allegations of ineffective assistance of trial counsel raised in Smith's seventh claim, but Smith has not demonstrated that they are clearly stronger than the claims raised on direct appeal either.[5]

**e**

For all of these reasons, Smith has not shown that his appellate counsel was ineffective for failing to raise on direct review the claims that he raised in his motion for relief from judgment. Smith has therefore not established the required cause to excuse his procedural default of those claims. Thus, the Court will deny Smith's sixth and seventh claims for habeas relief.

**F**

In Smith's eighth claim for habeas relief, he presents a standalone claim for ineffective assistance of appellate counsel raising many of the same ineffective assistance claims identified immediately above. For all of the same reasons that the Court just discussed, Smith is not entitled to relief on that ineffective assistance

---

[5] Smith identifies a ninth claim (listed as "Claim D") asserting three additional vague allegations of prosecutorial misconduct. (*See* Am. Pet. ECF No. 9, PageID.150.) The brief in support of the amended petition does not mention or expand on the allegations in that claim, and the issue is not sufficiently developed to allow for meaningful review. The Court therefore deems the claim to be abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief).

claim because he has not shown that his appellate counsel was constitutionally ineffective.  The Court will therefore deny relief on this claim.

## G

Smith's tenth claim asserts that a failure to review his claims will result in a fundamental miscarriage of justice. This argument also provides an alternative basis for overcoming Smith's procedural default. In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *See Smith v. Murray*, 477 U.S. 527, 537-38 (1986). Such a claim of actual innocence, however, requires a habeas petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Smith has not provided any new reliable evidence supporting his claim that Davis was not the shooter. Nor has Smith demonstrated the existence of a viable claim of factual innocence. The Court will therefore deny relief on this claim.

## H

In Smith's eleventh claim (Claim "F"), he asserts that he is entitled to habeas relief because the state courts failed to hold an evidentiary hearing on post-

conviction review in violation of *Jefferson v. Upton*, 560 U.S. 284 (2010). (*See* Am. Pet., ECF No. 9, PageID.170.)

To begin, as *Jefferson* itself acknowledged, *Jefferson* applied the pre-AEDPA version of the habeas statute, and its standard for whether an evidentiary hearing is warranted due to a state court's failure to hold a hearing has no application to this petition, which is subject to AEDPA. *See Jefferson*, 560 U.S. at 289-90 ("This habeas application was filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 and is therefore governed by federal habeas law as it existed prior to that point"). *See also Jones v. GDCP Warden*, 753 F.3d 1171, (11th Cir. 2014) (rejecting reliance on *Jefferson* in case subject to AEDPA because "*Jefferson* addressed a claim arising under the pre-AEDPA version of § 2254; the Jefferson Court was therefore operating under a different statute than the one controlling this case"). Moreover, Smith has not identified any clearly established federal law requiring a state court to hold an evidentiary hearing on claims of ineffective assistance of counsel, and the Sixth Circuit has held in an unpublished opinion that there is no such clearly established right. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584-85 (6th Cir. 2006).

For all of these reasons, Smith's eleventh claim (Claim "F") is without merit, and appointed habeas counsel's request for a remand to the state court for it to hold a hearing is likewise denied.

## IV

Because none of Smith's claims merit relief, Smith's amended petition for writ of habeas corpus (ECF No. 9) is **DENIED**.

The Court will, however, **GRANT** Smith a partial Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(1)(a). A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists could debate whether Smith's claim that he was denied a fair trial by admission of improper opinion testimony that officers believed Smith lied to them and was involved in the robbery and the associated claim that his trial counsel was ineffective for failing to object to that testimony. The Court will therefore grant Smith a limited Certificate of Appealability with respect to those claims.

A Certificate of Appealability is denied as to Smith's other claims.

Finally, because an appeal can be taken in good faith, the Court **GRANTS**

Smith leave to proceed *in forma pauperis* on appeal. *See* 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126